IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DJUAN PRESTON WILLIAMS,

     Plaintiff,

     v.

DOLLAR GENERAL CORPORATION,

     Defendant.

Case No. 6:26-cv-01028-HLT-BGS

## MEMORANDUM AND ORDER

Plaintiff Djuan Preston Williams brings this employment discrimination action pro se[1] and claims he was harassed, discriminated against, retaliated against, and terminated by his former employer because of his race, religion, and disability. He also claims his former employer unlawfully failed to promote him and failed to accommodate his disability. Defendant Dollar General Corporation moves to compel arbitration. Doc. 8. Defendant contends that Plaintiff entered into a valid arbitration agreement during his online hiring process and that the agreement covers Plaintiff's claims. The Court agrees, grants the motion, compels arbitration, and stays this case against Defendant.

## I.    BACKGROUND

Defendant hired Plaintiff to work as a Sales Associate. Plaintiff completed new hire paperwork through Defendant's online portal. He signed an e-signature consent form, where he agreed to complete the online hiring process using an electronic signature. He also signed an arbitration agreement through the online portal on May 12, 2025:

---

[1]    The Court liberally construes Plaintiff's pro se filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id*.

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or termination of employment with Dollar General ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.

Doc. 9-1 at 2. The agreement states that "arbitration is the exclusive means of resolving Covered Claims relating to or arising out of your Employment or termination with Dollar General." *Id.* "Covered Claims" are defined to include the following:

> relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

*Id.* The "paragraph below" excludes "claims for unemployment insurance benefits, workers' compensation benefits [workers' compensation discrimination and retaliation claims are Covered Claims], whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. Covered Claims also do not include claims pending in court as of the date this Agreement is signed by you, and claims concerning the scope or enforceability of this Agreement." *Id.*

Plaintiff had to select one of two boxes before signing the agreement:

> **NAME:** Djuan Williams        **SSN:**   XXX-XX-1929
>
> ☐ I would like to take up to 30 days after the start of my employment with Dollar General to review and consider this Agreement. I understand that if I do not expressly opt out within 30 days of the start of my employment using the process described above, I will be bound by the terms of this Agreement and that Dollar General will also be bound by the terms of this Agreement.
>
> ☑ I agree to the terms of the Agreement. I understand and acknowledge that by checking this box, both Dollar General and I will be bound by the terms of this Agreement.

Plaintiff checked the box indicating that he waived his ability to have thirty days to review and consider the arbitration agreement. Plaintiff then electronically signed his name. Plaintiff's electronic signature constituted his agreement dated May 12, 2025. Plaintiff began his employment roughly a month later. Plaintiff's employment with Defendant ended January 18, 2026.

Plaintiff brings this lawsuit for race, religious, and disability discrimination, harassment, and retaliation. He also claims Defendant failed to promote him and failed to accommodate his disability in violation of federal law.

## II.    ANALYSIS

Arbitration agreements are favored under federal law. But, despite their favored status, arbitration remains a matter of contract, and parties can't be compelled to arbitrate unless they have contractually agreed to be bound by arbitration. A court therefore analyzes two issues before compelling arbitration: (1) whether an agreement to arbitrate exists, and (2) whether the allegations in the complaint are within the scope of the agreement. *See Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018).

The party seeking to compel arbitration bears the initial burden to show a valid and enforceable agreement. *See Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). Arbitration agreements in the employment context may be formed when an employer provides "adequate notice of the offer to plaintiff and a meaningful opportunity to reject that offer." *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029, 1034 (D. Kan. 2018). But a party cannot avoid arbitration "by generally denying the facts upon which the right to arbitration rests." *Perkins v. Rent-A-Ctr., Inc.*, 2004 WL 1047919, at *1 (D. Kan. 2004) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). When the movant provides evidence of a valid agreement, the

burden shifts to the nonmovant to show a genuine issue of material fact about the agreement's validity. *Williams v. Staffmark Inv. LLC*, 2022 WL 910859, at *2 (D. Kan. 2022) (citation omitted).

**1. Agreement to Arbitrate.** Basic contract law governs whether the parties entered a binding arbitration agreement. This, of course, requires (1) an offer, (2) acceptance, and (3) consideration. *Wakeman v. Uber Techs., Inc.*, 721 F. Supp. 3d 1191, 1196 (D. Kan. 2024). The undisputed evidence shows Defendant offered the agreement to Plaintiff by providing it through the online hiring process. Plaintiff had the opportunity to review it and could have checked that he wanted thirty days to decide whether to opt out. Instead, he checked the box indicating that he agreed to the terms of the arbitration agreement and electronically signed the document. This is acceptance. Plaintiff continued employment with Defendant for more than thirty days after receiving the agreement, which also equates to acceptance. And the agreement provides that both parties are bound to arbitrate. This constitutes sufficient consideration. *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1226, n.1 (D. Kan. 2007). Defendant has met its burden to make an initial showing that a valid arbitration agreement exists. The burden shifts to Plaintiff. As discussed in more detail below, Plaintiff offers no evidence or supported argument that a valid arbitration agreement does not exist.

**2. Scope of Agreement.** The arbitration agreement states that it applies to claims:

> relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for defamation or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

Doc. 9-1 at 2. Plaintiff's claims for employment discrimination, harassment, and retaliation fall squarely within this definition. The next paragraph of the agreement does not exclude them. There is simply no colorable basis for arguing that Plaintiff's claims fall outside the scope of the agreement. Plaintiff has not even attempted to do so.

**3. Plaintiff's Responses.** The Court only briefly addresses Plaintiff's arguments in opposition because they are generic and unsupported arguments. They are wholly insufficient to avoid Plaintiff's agreement with Defendant to arbitrate his employment claims.

Plaintiff filed multiple briefs in anticipation of and after Defendant's motion to compel arbitration. He does not meaningfully dispute that he agreed to the arbitration agreement or that the agreement covers his claims. Instead, Plaintiff uses various legal terms of art without citing authority or facts. The Court summarizes them here in the same cursory fashion Plaintiff does:

- Defendant fails to show it was a party to the agreement based on Defendant's corporate disclosure statement.

- The declaration of Debbie Roach, Defendant's Human Resources Shared Services Senior Manager, is insufficient because she does not have personal knowledge of Plaintiff's understanding.

- The agreement did not explain Plaintiff's arbitration rights or the fact he waived a jury trial.

- Mutuality is lacking and the agreement is an adhesive contract because of unequal bargaining power.

- Public policy weighs against enforcement.

- The Court should grant Plaintiff discovery about contract formation, onboarding procedures, and corporate structure.

Plaintiff's effort is no more than a summary of high-level ideas without caselaw or context to develop them. The presentation is short and clean, but there is simply nothing adequately tying Plaintiff's bullet points to <u>this</u> case and <u>Plaintiff's</u> agreement to arbitrate. Simply stated, Plaintiff offers no specific and directed argument that demonstrates why arbitration is not appropriate.

**4. Additional Filings.** Plaintiff filed a "supplement" and exhibits after Defendant filed its reply brief. Docs. 18 and 19. Plaintiff did not seek leave to file a surreply. Defendant moved to strike the documents. Doc. 20.

The documents appear to be no more than an attempt to get the last word. They are improperly filed and fail to comply with D. Kan. Rules 6.1 and 7.1. Rule 6.1(d)(4) requires responses to certain motions (including a motion to arbitrate) to be filed within fourteen days after the motion is served. Plaintiff filed Docs. 18 and 19 seventeen days after Defendant's motion. The documents are therefore untimely. And Rule 7.1 allows a party to file <u>one</u> response brief limited to fifteen pages. But Plaintiff has now filed <u>five</u> documents relating to arbitration, totaling twenty-eight pages. The documents therefore violate the filing rules and page limit. They are also in the nature of a surreply filed without permission. The District's rules do not provide for the filing of surreplies. The Court generally only allows them when a movant improperly raises new arguments in a reply brief. Plaintiff has made no showing that happened here, and he did not seek leave to file a surreply. The Court strikes Docs. 18 and 19 for all these reasons.

Defendant notes that these documents (along with Plaintiff's other filings) appear to be AI-generated, and it asks the Court to require Plaintiff to "include a sworn statement in all future filings disclosing the extent to which AI was used to generate the filing, naming the AI tool used, identifying which portion of the filing includes AI-generated content, and certifying that he has personally reviewed and verified the accuracy of each legal authority cited." Doc. 21 at 7.

The Court likewise suspects Plaintiff used AI as a drafting aid. Plaintiff's supplemental filings include incorrect citation to legal authority. *See, e.g.*, Doc. 18 at 5 (citing cases for incorrect legal authority). One case also does not have the correct citation, but the Court was able to identify

6

a case with the same title and a similar citation, albeit a different date of issuance. These errors suggest that Plaintiff used AI and did not verify the citations before filing the documents.

The Court understands the allure of utilizing AI tools to help navigate an unfamiliar legal system that can be challenging and complicated for someone untrained in the law. But the Court also understands the frustration that the use of AI tools by pro se litigants poses, particularly when it is unclear whether the AI-generated documents have been checked by human review. *See Gouveia v. Meridian Fin. Invest.*, 2026 WL 816497 (Fla. App. 4 Dist. 2026) (admonishing pro se party's unchecked use of AI filings). Pro se litigants (as well as counsel utilizing AI tools) must be mindful and engage in meaningful review of AI-generated products before filing.

To this end, the District of Kansas has adopted Standing Order 26-01, which addresses the use of AI in court filings. Although the use of AI in litigation is not inherently suspect, its use can increase the risk that litigants unwittingly run afoul of certain ethical obligations. The standing order reminds all parties, including pro se litigants, of these obligations and advises them that they are responsible for the content of their filings and for complying with ethical obligations. It requires litigants to verify the accuracy of content filed with the Court that was drafted or assisted by an AI tool.

Plaintiff's use of improper citations may simply be error, but it also may reflect the use of AI without human review. The Court need not resolve this issue here because it is compelling arbitration and there should be few (if any) filings soon in this case. But the Court cautions Plaintiff that the allure of the use of AI tools is much the same as that of the sirens' song. There is an element of peril in their use. These tools appear to be a free or low-cost solution for a litigant who lacks formal legal training and access to counsel. The output is generated rapidly and sounds correct. But it can be incorrect. Like here, it may contain faulty citations or articulate inapplicable

7

legal principles. And pro se or not, the litigant is still obligated to check the output for correctness. The limitations on the technology don't excuse incorrect statements and they certainly do not absolve a pro se litigant of his failure to comply with his obligations or court rules. A litigant is responsible for his case and for his representations to a court. The buck stops with him. And he remains responsible for the consequences that flow from his violation of rules and from his decision to use tools that create an output he does not understand. These consequences may involve investigations, certifications, or sanctions.

THE COURT THEREFORE ORDERS that Defendant's motion to compel arbitration (Doc. 8) is GRANTED. This case is STAYED pending arbitration.

THE COURT FURTHER ORDERS that Plaintiff's motion for limited discovery (Doc. 13) is DENIED WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Defendant's motion to strike (Doc. 20) is GRANTED. The Court strikes Docs. 18 and 19.

IT IS SO ORDERED.

Dated: April 17, 2026                    /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

8